| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION _____ COURT |
| | )SS: | 49C01 07 08 CT 0 32 1 8 7 |
| COUNTY OF MARION | ) | CAUSE NO. _____ |

SARAH JO GILL, JUDY HULTS, WAYNE )
HULTS, SHELLY MOORE, MATTHEW )
NIEBAUER, TERRY L. REYNOLDS, BETTY )
STAPLETON, and PAUL STAPLETON, )
         )
     Plaintiffs, )
         )
     v. )
         )
GIVAUDAN FLAVORS CORPORATION, )
f/k/a Givaudan-Roure Corp., and also f/k/a )
Givaudan-Roure Flavors Corporation and also )
f/k/a Tastemaker Corporation and also f/k/a )
Fries & Fries, Inc. and also f/k/a Mallinckrodt )
Foods & Flavors, Inc., and f/k/a Mallinckrodt )
Flavor & Fragrances, Inc., and f/k/a a partner )
partner in the partnership Tastemaker; ALEX )
FRIES, INC.; CHR. HANSEN, INC.; )
DEGUSSA FLAVORS & FRUIT SYSTEMS )
MANUFACTURING, L.L.C.; GOLD MEDAL )
(FLAVACOL); HENRY H. OTTENS )
MANUFACTURING COMPANY, INC.; )
CARGILL FLAVOR SYSTEMS U.S., L.L.C., )
f/k/a SKW Flavors & Fruit Systems Manufact- )
uring, LLC., and also f/k/a Degussa Flavors )
& Fruit Systems Manufacturing, LLC, and f/ka )
f/k/a Degussa Flavors & Fruit Systems US, )
LLC;and also f/k/a Alex Fries, Inc.; SENSIENT )
FLAVORS INC.; FLAVORS OF )
NORTH AMERICA, INC.;  BASF )
CORPORATION; WILD FLAVORS, INC.; )
H. B. TAYLOR CO., f/k/a H. B. Taylor, Inc.; )
THE FLAVOR & EXTRACT )
MANUFACTURERS ASSOCIATION OF THE )
UNITED STATES; John Doe Defendants (1-20); )
         )
     Defendants. )

FILED

AUG 0 2 2007

(129)

Clerk of WAYNE
CLERK OF THE MARION CIRCUIT COURT

**COMPLAINT**
**AND**
**JURY DEMAND**

## COMPLAINT & JURY DEMAND

COME NOW Plaintiffs Sarah Jo Gill, Judy Hults, Wayne Hults, Shelly Moore, Matthew Niebauer, Terry L., Reynolds, Betty Stapleton, and Paul Stapleton, by counsel, and for their causes of action against Defendants Givaudan Flavors Corporation, a Delaware Corporation (formerly known as Givaudan-Roure Corp., and also as Givaudan-Roure Flavors Corporation and also formerly known as Tastemaker Corporation and also as Fries & Fries, Inc. and also as Mallinckrodt Foods & Flavors, Inc. and also as Mallinckrodt Flavor & Fragrances, Inc. and as a partner in the partnership Tastemaker), Alex Fries, Inc., an Ohio corporation, CHR. Hansen, Inc., a Wisconsin corporation, Degussa Flavors & Fruit Systems Manufacturing, L.L.C., an Ohio corporation, Gold Medal (Flavacol), an Ohio corporation, Henry H. Ottens Manufacturing Company, Inc., a Pennsylvania corporation, Cargill Flavor Systems U.S., L.L.C., a Delaware corporation (f/k/a SKW Flavors & Fruit Systems Manufacturing, L.L.C., and also f/k/a Degussa Flavors & Fruit Systems Manufacturing, LLC, and also f/k/a Degussa Flavors & Fruit Systems US, LLC, and also f/k/a Alex Fries, Inc.); Sensient Flavors International, Inc., Flavors of North America, Inc., an Illinois corporation, BASF Corporation, a New Jersey corporation, Wild Flavors, Inc., a Kentucky corporation, H.B. Taylor Co., an Illinois corporation, f/k/a H.B. Taylor, Inc., and John Doe Defendants (1-20), state:

## JURISDICTION AND VENUE

1.     Jurisdiction and Venue are proper in this Court under Indiana law and Indiana Rules of Civil Procedure.

2.     The Plaintiffs are as follows:

      a.     Sarah Jo Gill, an individual who is a resident of Marion, Indiana;

2

b.      Judy Hult and Wayne Hults, married individuals who are residents of Marion, Indiana;

c.      Shelly Moore, an individual who is a resident of Marion, Indiana;

d.      Matthew Niebauer, an individual who is a resident of Van Buren, Indiana;

e.      Terry L. Reynolds, an individual who is a resident of Marion, Indiana; and

f.      Betty Stapleton and Paul Stapleton, married individuals who are residents of Marion, Indiana.

3.      Defendant Sensient Flavors, Inc. ("Sensient") is a foreign corporation with its principle place of business located in Indianapolis, Indiana, and which, upon information and belief, designed, manufactured and/or supplied butter flavorings and other products containing diacetyl to which these Plaintiffs were exposed during pertinent years.

4.      Defendant The Flavor & Extract Manufacturers Association of the United States ("FEMA") is a Maryland non-profit corporation whose principle place of business is located in Baltimore, Maryland.

5.      All the Defendants have regularly conducted business within the state of Indiana and all other named Defendants are foreign corporations whose principle places of business, upon information and belief, are as follows:

a.      Givaudan Flavors Corporation is a Delaware corporation whose principle place of business is located in the state of Ohio;

b.      Alex Fries, Inc., is an Ohio corporation whose principle place of business is located in the state of Ohio. On information and belief, due to merger or acquisition Defendant Alex Fries, Inc is now a part of Defendant Cargill Flavor Systems US,

3

LLC;

c.    Chr. Hansen, Inc., is a Wisconsin corporation whose principle place of business is located in the state of Wisconsin;

d.    Degussa Flavors & Fruit Systems Manufacturing, L.L.C, is an Ohio corporation whose principle place of business is located in the state of Ohio. On information and belief, due to merger or acquisition, Defendant Degussa Flavors & Fruit Systems Manufacturing, LLC, is now a part of Defendant Cargill Flavor Systems US, LLC;

e.    Gold Medal (Flavacol) is an Ohio corporation whose principle place of business is located in the state of Ohio;

f.    Henry H. Ottens Manufacturing Company, Inc., is a Pennsylvania corporation whose principle place of business is located in the state of Pennsylvania;

g.    Cargill Flavor Systems U.S., L.L.C., is a Delaware corporation whose principle place of business is located in the state of Minnesota;

h.    Flavors of North America, Inc., is an Illinois corporation whose principle place of business is located in the state of Illinois;

i.    BASF Corporation is a New Jersey corporation whose principle place of business is located in the state of New Jersey;

j.    Wild Flavors, Inc., is a Kentucky corporation whose principle place of business is located in the state of Kentucky;

k.    H.B. Taylor Co., is an Illinois corporation whose principle place of business is located in the state of Illinois;

and which, upon information and belief, all designed, manufactured and/or supplied butter flavorings

4

and other products containing the chemical diacetyl to which these Plaintiffs were exposed during pertinent years.

6.      At all times pertinent hereto, the true names and addresses of John Doe Defendants 1-20 have been and remain unknown despite Plaintiffs' attempts to discover their names and addresses. It is known that these Defendants are individuals, partnerships, or corporations who are or were engaged in the business of designing, manufacturing, and selling butter flavoring and other products containing diacetyl to which these Plaintiffs were exposed.

## NATURE OF CASE

7.      Plaintiffs include two groups of persons: (1) former employees of Weaver Popcorn Company, Inc., d/b/a "Pop Weaver" (hereinafter "Pop Weaver") which owns and operates the Pop Weaver popcorn packaging plant in Van Buren, Indiana; and, (2) the spouses of certain such employees. The former employees named herein worked as mixers, line workers, maintenance workers, and in other jobs at Pop Weaver. They were exposed to Defendants' natural and artificial butter flavorings and other products containing diacetyl in the ordinary course of such employment and, as a result, have contracted a variety of pulmonary illnesses.

8.      Plaintiffs seek judgment against the Defendants for compensatory and punitive damages caused by the Defendants' intentional, malicious, reckless, and/or negligent design, testing, formulation, manufacture, marketing and selling of the defective natural and artificial butter flavorings and other products containing diacetyl, and for their fraud in concealing the dangers of their products from these Plaintiffs, and for their conspiracy.

## GENERAL ALLEGATIONS

9.      Whenever reference in this Complaint is made to any act or transaction by a

5

Defendant, such allegation shall be deemed to mean that the principals, officers, directors, employees, managing members, agents and/or representatives of such Defendant committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of such Defendant while actively engaged in the scope of his or her duties.

10.    At all pertinent times, the Defendants designed, manufactured, marketed and/or distributed their natural and artificial butter flavorings and other products containing diacetyl.

11.    The Defendants, other than Defendant FEMA, sold their natural and artificial butter flavorings and other products containing diacetyl for use in the Pop Weaver popcorn packaging facility, which packages popcorn for both national and international distribution.

12.    Defendant FEMA is and/or was, at all times relevant herein, a trade association for flavoring manufacturers, which, among other things, undertook the duty to educate, inform and warn its member companies and their employees, the scientific and medical community, and the public of health risks and hazards surrounding flavoring products and processes, including the hazards related to exposure to chemicals in the manufacturing process. FEMA, however, conspired with its members and members of the flavoring industry to fraudulently conceal the true facts regarding the health consequences of butter flavorings and other products containing diacetyl, and diacetyl itself, from the scientific and medical communities, the government and the public, including Plaintiffs.

13.    On information and belief, Defendant companies were members of FEMA at all times relevant hereto.

14.    Before and/or during the time Plaintiffs worked at the Pop Weaver plant, defendants Givaudan and H.B. Taylor Co., were named as defendants in Spaulding v. AAPER, et al., Circuit Court of Marshall County, Indiana, Case No. CTC 86-117, filed April 15, 1986 and Kois v. Aceto

Chemical Co., et al., Circuit Court of Marshall County, Indiana, Case No. CTC 86-200.  The plaintiffs in both actions alleged to have suffered from lung disease from exposure to chemicals at the International Bakers Services Plant.  Among the chemicals identified in the action as having caused or contributed to cause lung injury to Spaulding and Kois was diacetyl.  Givaudan and H.B. Taylor Co. each were represented by counsel in the lawsuits.

15.     In August 1996 Givaudan met with FEMA representatives John Hallagan, Daniel Thompson, and Richard Hall and disclosed to FEMA that one or more Givaudan employees had been diagnosed with bronchiolitis obliterans; that one or more flavoring chemicals may cause bronchiolitis obliterans; and that they had discovered a report by the National Institute for Occupational Safety and Health Administration concerning bronchiolitis obliterans at the International Bakers Plant.

16.     As a result of the meeting with Givaudan, FEMA sponsored an April 1997 seminar called Respiratory Safety in the Flavor and Fragrance Workplace.  The disease bronchiolitis obliterans was discussed at the seminar as well as its causes and necessary precautions to prevent it.  The NIOSH study of the International Bakers plant was also discussed, and the NIOSH report was produced with the seminar materials to all attendees.  FEMA did not advise seminar attendees of the lung disease at Givaudan.

17.     FEMA offered as a service to its members a research library concerning hazards of chemicals which included a "monograph" on diacetyl; a service, called Flavor and Fragrance Ingredient Data Sheet (FFIDS) that drafted suggested language for its members to use in Material Safety Data Sheets regarding hazards of specific chemicals including diacetyl; and scientific resources to determine the hazards of chemicals.

7

18.     FEMA did not include in its diacetyl monograph any information it possessed concerning the causes of bronchiolitis obliterans at the Indiana Bakers Services Plant.

19.     FEMA did not include in its FFIDS for diacetyl language that diacetyl could cause severe and permanent lung injury.

20.     FEMA, although aware that flavoring ingredients may cause lung injury and that its tests to determine hazards of flavoring ingredients did not test for inhalation hazards, chose not to test any flavor ingredients for inhalation hazards.

21.     After FEMA became aware of the cases of bronchiolitis obliterans at the Givaudan plant, FEMA chose not to make changes in its diacetyl monograph or its diacetyl FFIDS and, in fact, chose not to conduct specific inhalation tests on any chemicals so that it could continue to state that the chemicals were safe.

22.     The Pop Weaver facility uses and has used natural and artificial butter flavorings and other products containing diacetyl designed, manufactured and/or supplied by the named company Defendants.

23.     Defendants' natural and artificial butter flavorings and other flavoring products contain the compound diacetyl and other compounds that volatilize during the preparation and use of the oil and flavor mixture during the microwave popcorn packaging process. Exposure to these flavoring compounds causes damage to the respiratory systems of popcorn workers in the form of asthma, bronchiectasis, bronchiolitis obliterans, chronic bronchiolitis, chronic obstructive bronchitis, chronic cough, chronic obstructive pulmonary disease, emphysema, fatigue, obstructive spirometry abnormalities, severe lung impairment, shortness of breath, and/or other respiratory illnesses and diseases.

8

24.     The Defendants knew or should have known of the hazardous nature of their natural and artificial butter flavorings and other products containing diacetyl at the time of sale and while Plaintiffs, working at the Pop Weaver facility, were exposed to such products and were injured. Defendants identified diacetyl as a dangerous compound within their own manufacturing facilities and implemented engineering and industrial hygiene precautions against exposing their employees to the components of butter flavoring. Notwithstanding the foregoing, the Defendants failed to warn of the danger associated with exposure to their finished butter flavoring products and other products containing diacetyl, and Defendants failed to give instructions regarding the safe use of, and necessity of precautions around, such products. As a direct and/or proximate result of said failure to warn and failure to give proper instructions, Plaintiffs did not know of or appreciate the hazards posed by said products.

25.     Plaintiffs' exposure to Defendants' natural and artificial butter flavorings and other products containing diacetyl directly and/or proximately caused personal injury, i.e., the development of sustained, severe, permanent, and/or progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function as a whole person. The Plaintiffs have suffered and will continue to suffer damages as a direct and/or proximate result of these injuries, including but not limited to, pain and suffering and future pain and suffering, loss of consortium, mental and emotional distress, and/or loss of sleep and natural rest, loss of the ability to function as a whole person, loss of enjoyment of life, and permanent impairment. In addition, Plaintiffs have suffered and will suffer loss of wages and/or earning capacity, and have expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

## COUNT I
## (All Defendants Except FEMA)
## Strict Liability in Tort -- Design Defect

26.     Plaintiffs incorporate by reference rhetorical paragraphs 1-15 as if fully set forth hereunder.

27.     The Defendants manufactured, sold and distributed or otherwise placed into the stream of commerce, their natural and artificial butter flavoring products and other products containing diacetyl within the ordinary course of their businesses.

28.     When Plaintiffs were exposed to the Defendants' products:

a.      said products were more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and/or

b.      the foreseeable risks associated with the design or formulation of the products exceeded the benefits associated with their design or formulation, in that:

i.      the nature and magnitude of the risks of harm associated with the design or formulation of said products, in light of the intended and reasonably foreseeable uses, modifications and alterations of said products, outweighed the intended or actual utility of said designs and formulations;

ii.     product users within the Pop Weaver facility would not likely be aware, whether based on warnings, general knowledge, or otherwise, of the risks of harm;

iii.    it was likely that the design or formulation of the Defendants' natural and artificial butter flavorings and other products containing diacetyl would cause harm in light of their intended and reasonably foreseeable uses, modifications and

10

alterations;

iv.    there was no performance or safety advantages associated with the design or formulation of Defendants' products; and

v.    Defendants possessed both the technical and economic feasibility of using an alternative design or formulation when the products left the control of Defendants.

29.    Plaintiffs used Defendants' products in an intended and reasonably foreseeable manner.

30.    At the time of the design, manufacture, processing, distribution, sale and/or use of the Defendants' products, said products were defective as designed when put to the use anticipated by the Defendants, as a result, among other things, of their butter flavorings and other products containing diacetyl and other compounds having the propensity to cause damage to the respiratory system in the form of asthma, bronchiectasis, bronchiolitis obliterans, chronic bronchiolitis, chronic obstructive bronchitis, chronic cough, chronic obstructive pulmonary disease, emphysema, fatigue, obstructive spirometry abnormalities, severe lung impairment, shortness of breath, and other respiratory illnesses.

31.    As a result of said Defendants' products' propensity to cause respiratory disease, as described above, the Defendants' products were unreasonably dangerous and defective when put to the intended and reasonably foreseeable use anticipated by the Defendants.

32.    Plaintiffs' harm was not caused by an inherent characteristic of Defendants' products which is a generic aspect of their products that cannot be eliminated without substantially compromising the products' usefulness or desirability and which is recognized by the ordinary

11

person with the ordinary knowledge common to the community.

33.     A practical and technically feasible alternative design or formulation was available for Defendants' products that would have prevented the harm to Plaintiffs without substantially impairing the usefulness or intended purpose of Defendants' products.

34.     As a direct and proximate result of the dangerous and defective condition of the Defendants' products and the defendants' failure to warn of the dangers thereof, Plaintiffs have developed severe, permanent, and progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function. They have suffered and continue to suffer damages, including but not limited to physical pain, loss of consortium, mental and emotional distress, loss of enjoyment of life, loss of ability to function as a whole person, permanent impairment, and/or loss of sleep and natural rest. In addition, Plaintiffs have suffered and will suffer loss of wages and/or earning capacity, and have expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

35.     The acts and omissions of Defendants causing harm to Plaintiffs demonstrate malice, intentionality, aggravated or egregious fraud, oppression, or insult, such that punitive damages should be assessed against defendants.

WHEREFORE, Plaintiffs pray for judgment in their favor and against all Defendants, jointly and severally as determined at trial, actual damages, punitive damages, for costs, and for all other relief just and proper in the premises.

12

## COUNT II
## (All Defendants Except FEMA)
## Failure to Warn

36.     Plaintiffs incorporate by reference rhetorical paragraphs 1-25 as if fully set forth hereunder.

37.     The Defendants designed, manufactured, processed, distributed, marketed, sold and supplied their natural and artificial butter flavorings and other products containing diacetyl without adequate instructions on safe use to reduce and/or eliminate exposure thereto, and/or without warnings that the products contained substances that are dangerous to health and life and cause severe respiratory diseases.

38.     Defendants knew, or in the exercise of reasonable care, should have known about the health risks associated with exposure to their natural and artificial butter flavoring products and other products containing diacetyl.

39.     Defendants failed to provide the post-marketing warning or instruction that a manufacturer exercising reasonable care would have provided concerning the risk, in light of the likelihood that the products would cause Plaintiffs' injuries and in light of the likely seriousness of these injuries.

40.     The health risks associated with Defendants' products were not open and obvious, or of a type that is a matter of common knowledge.

41.     As a result of said Defendants' failure to adequately instruct and warn of the dangerous characteristics of the products, said products were defective and unreasonably dangerous when put to the use reasonably anticipated by the Defendants.

42.     As a direct and proximate result of the dangerous and defective condition of the

13

Defendants' products and the Defendants' failure to warn of the dangers thereof, Plaintiffs have developed severe, permanent, and progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function. They have suffered and continue to suffer damages, including but not limited to physical pain, loss of consortium, mental and emotional distress, loss of enjoyment of life, loss of ability to function as a whole person, permanent impairment, and/or loss of sleep and natural rest. In addition, Plaintiffs have suffered and will suffer loss of wages and/or earning capacity, and have expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

43.     The acts and omissions of Defendants causing harm to Plaintiffs demonstrate malice, intentionality, aggravated or egregious fraud, oppression, or insult, such that punitive damages should be assessed against defendants.

WHEREFORE, Plaintiffs pray for judgment in their favor and against all Defendants, jointly and severally as determined at trial, actual damages, punitive damages, for costs, and for all other relief just and proper in the premises.

## COUNT III
### (All Defendants Except FEMA)
### Negligent Design

44.     Plaintiffs incorporate by reference rhetorical paragraphs 1-33 as if fully set forth hereunder.

45.     As designers, manufacturers, processors, distributors, marketers, sellers and suppliers of natural and artificial butter flavorings and other products containing diacetyl, the Defendants had a duty to exercise due care and the ordinary, reasonable and technical skill and competence that is required of designers, manufacturers, processors, distributors, marketers, sellers, suppliers, and

14

others in a similar situation, including, without limitation: the duty to test their products; the duty to acquire and maintain the knowledge of an expert, to design, manufacture, process, distribute, market, sell, and/or supply their products free from defects and/or latent defects; and the duty to adequately warn of product defects and/or hazards, which duty continued even after the sale of said products.

46.     The Defendants failed to use due care under the circumstances and were thereby negligent in the performance of their duties to Plaintiffs.

47.     As a direct and/or proximate result of the Defendants' negligence, Plaintiffs have developed severe, permanent, and progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function. They have suffered and continue to suffer damages, including but not limited to physical pain, loss of consortium, mental and emotional distress, loss of enjoyment of life, loss of ability to function as a whole person, permanent impairment, and/or loss of sleep and natural rest. In addition, Plaintiffs have suffered and will suffer loss of wages and/or earning capacity, and have expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

48.     The acts and omissions of Defendants causing harm to Plaintiffs demonstrate malice, intentionality, aggravated or egregious fraud, oppression, or insult, such that punitive damages should be assessed against Defendants.

WHEREFORE, Plaintiffs pray for judgment in their favor and against all Defendants, jointly and severally as determined at trial, actual damages, punitive damages, for costs, and for all other relief just and proper in the premises.

15

## COUNT IV
### (All Defendants)
### Fraudulent Concealment/Constructive Fraud

49.     Plaintiffs incorporate by reference rhetorical paragraphs 1-38 as if fully set forth hereunder.

50.     By at least 1991, Defendants knew that butter flavorings and other products containing diacetyl cause adverse health effects to humans, including severe respiratory disease.

51.     Defendants had a duty to disclose such information to Plaintiffs because, *inter alia*,

a.      Defendants possessed knowledge and expertise regarding the health effects of butter flavorings and other products containing the chemical diacetyl that was superior to Plaintiffs' knowledge;

b.      Because of this superior knowledge and expertise, Defendants enjoyed a position of superiority to that of Plaintiffs;

c.      Defendants had a relationship of trust with Plaintiffs' employer and with Plaintiffs regarding the safety of the products they designed, manufactured, processed, distributed, marketed, sold and supplied to Pop Weaver;

d.      other attendant circumstances; and

e.      This relationship and Defendants' position of superiority invoked a duty of good faith and fair dealing on Defendants' part.

52.     Despite such knowledge, Defendants intentionally and maliciously chose to conceal these facts from the scientific and medical communities, the government, the public, their customers and their customers' employees, including Plaintiffs, and remained silent despite their duty to disclose these facts to Plaintiffs.

16

53.    The information concealed by the Defendants regarding the serious health risks of using their butter flavorings and other products containing the chemical diacetyl was material.

54.    Plaintiffs reasonably and detrimentally relied upon Defendants to provide butter flavorings and other products to Plaintiffs' employers that would be safe for use in the ordinary course of the business of Plaintiffs' employers and/or that Defendants would disclose to Plaintiffs and/or warn them of any serious health risks they knew existed for persons exposed to Defendants' product in the manner in which Plaintiffs were so exposed.  Plaintiffs further reasonably and detrimentally relied on Defendants' fraudulent concealment of the dangers of exposure to their natural and artificial butter flavorings and other products containing diacetyl, by not acting to protect themselves from those dangers.

55.    Defendants profited from their fraud by continuing and increasing the sale or use of butter flavorings and other products containing the chemical diacetyl which they knew was hazardous to persons deliberately kept ignorant of material facts concerning the true hazards of butter flavorings and other products containing the chemical diacetyl.

56.    As a direct and proximate result of the Defendants' fraudulent concealment, Plaintiffs have developed severe, permanent, and progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function.  They have suffered and continue to suffer damages, including but not limited to physical pain, loss of consortium, mental and emotional distress, loss of enjoyment of life, loss of ability to function as a whole person, permanent impairment, and/or loss of sleep and natural rest. In addition, Plaintiffs have suffered and will suffer loss of wages and/or earning capacity, and have expended and will expend money for medical treatment, medication, medical monitoring and/or medical devices.

17

WHEREFORE, Plaintiffs pray for judgment in their favor and against all Defendants, jointly and severally as determined at trial, actual damages, punitive damages, for costs, and for all other relief just and proper in the premises.

## COUNT V
### Civil Conspiracy
### (As Against All Defendants)

57.     Plaintiffs incorporate by reference rhetorical paragraphs 1-46 as if fully set forth hereunder.

58.     Defendants, as members of the flavoring industry and experts in the design, manufacture, marketing, distribution and sale of butter flavorings and other products containing diacetyl knew, at all times relevant to the events described in this Complaint that butter flavorings and other products containing diacetyl, and diacetyl itself, were hazardous to human health as more fully described above. Despite this knowledge and due to Defendants' strong pecuniary motives in continuing and increasing the sale of Defendants' products, they developed a plan to fraudulently conceal their knowledge of the true health effects of butter flavorings and other products containing diacetyl from the scientific and medical communities, the government and the public, Pop Weaver, and its employees including Plaintiffs, as more fully described below.

59.     Defendants' continuing collaboration with others in the flavoring industry to conceal and misrepresent the true facts regarding the health consequences of constitute overt actions to defraud users and consumers of butter flavorings and other products containing diacetyl, including Plaintiffs. Defendants' overt actions include, but are not limited to, the following:

        a.     The formation and continuation of an industry trade association and trade

18

association management group, FEMA, which conspired with the other Defendants to conceal material information regarding the hazards of butter flavorings and other products containing diacetyl from the public.   Specifically, FEMA received and/or developed information that butter flavorings and other products containing diacetyl cause human disease, including bronchiolitis obliterans, from the other Defendants by at least 1988 and agreed not to reveal this information to the scientific and medical communities, the government and the public, including Plaintiffs. FEMA further drafted proposed language to be used in material safety data sheets that did not fully disclose the hazards of these chemicals;

b.      By at least 1993 the Defendants hired paid medical and scientific consultants to investigate the hazards of flavoring workers' exposure to butter flavorings and other products containing diacetyl. Defendants entered into agreements with these consultants to conceal the information acquired by the consultants from the scientific and medical communities, the government and the public, and Pop Weaver and its employees, including Plaintiffs; and

c.      Beginning in at least March of 1997, FEMA met frequently and continually with the other Defendants and discussed the hazards of butter flavorings and other products containing diacetyl, including several cases of bronchiolitis obliterans in the flavoring industry. The Defendants agreed to conceal their knowledge of this information from the scientific and medical communities, the government and the public, and Pop Weaver and its employees, including Plaintiffs.

60.     As a direct and proximate result of the Defendants' conspiracy, Plaintiffs developed

19

bronchiolitis obliterans, which caused, *inter alia*, severe, permanent, and progressive damage to the lungs, severe damage to the respiratory system, and/or impairment of the ability to function. They have suffered and continue to suffer damages, including but not limited to physical pain, loss of consortium, mental and emotional distress, loss of enjoyment of life, loss of ability to function as a whole person, permanent impairment, and/or loss of sleep and natural rest. In addition, Plaintiffs suffered and will suffer loss of wages and/or earning capacity, and have expended money for medical treatment, medication, medical monitoring and/or medical devices.

WHEREFORE, Plaintiffs pray for judgment in their favor and against all Defendants, jointly and severally as determined at trial, actual damages, punitive damages, for costs, and for all other relief just and proper in the premises.

### COUNT VI
### Loss of Consortium and Claim for Medical Expenses

61.     Plaintiffs Wayne Hults and Paul Stapleton incorporate by reference rhetorical paragraphs 1-50 as if fully set forth hereunder.

62.     At all relevant times hereto, Plaintiff Wayne Hults was and is the spouse of Plaintiff Judy Hults and Plaintiff Paul Stapleton was and is the spouse of Plaintiff Betty Stapleton.

63.     As a direct and proximate result of Defendant's breach of their various duties of care and their actions and non-actions as set forth above, Plaintiffs Wayne Hults and Paul Stapleton have lost the care, comfort, society, and household services of their respective spouses.

64.     The acts and omissions of Defendants causing harm to Plaintiffs demonstrate malice, intentionality, aggravated or egregious fraud, oppression, or insult, such that punitive damages should be assessed against Defendants.

20

WHEREFORE, Plaintiffs Wayne Hults and Paul Stapleton  respectfully request judgment in their favor and against Defendants in an amount sufficient to compensate them for the damages sustained due to Defendant's intentional, reckless, and/or negligent behavior as stated in Counts I-V above and determined at trial, actual damages, punitive damages and for such further relief as the Court deems fair and reasonable in the premises.

## COUNT VII
### Punitive Damages

65.     Plaintiffs incorporate by reference rhetorical paragraphs 1-54 as if fully set forth hereunder.

66.     The Defendants' acts or failure to act demonstrated intentionality, malice, aggravated or egregious fraud, oppression, or insult, as well as a conscious disregard for the rights and safety of other persons that had a great probability of causing substantial harm.  The award for this count should be in an amount sufficient to deter Defendants and others from the future commission of like offenses and wrongs.

WHEREFORE, Plaintiffs pray for judgment in their favor and against all Defendants, jointly and severally as determined at trial for punitive damages in an amount sufficient to deter Defendants from engaging in such conduct in the future, for costs, and for all other relief just and proper in the premises.

21

Respectfully submitted,

ALLEN WELLMAN McNEW

By: _____
Kevin G. Harvey, Atty #17994-49

_____
Philip C. Sheward, #25093-20

## DEMAND FOR JURY TRIAL OF ALL CLAIMS

COME NOW Plaintiffs, by counsel and pursuant to Ind. Trial Rule 38, and demand a trial

by jury of all of their claims in the above-entitled cause of action.

Respectfully submitted,

ALLEN WELLMAN McNEW

By: _____
Kevin G. Harvey, #17994-49

_____
Philip C. Sheward, #25093-20

ATTORNEYS FOR PLAINTIFFS:

Kevin G. Harvey, #17994-49
Philip C. Sheward, #25093-20
ALLEN WELLMAN McNEW
P.O. Box 455
5 Courthouse Plaza
Greenfield, Indiana 46140
Phone: (317) 467-6108
Fax: (317) 467-6109

22